

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 9, 2017**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| LE-MAR HOLDINGS, INC., et al.,[1] | § | Case No.:  17-50234-RLJ-11 |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

On October 13, 2017, hearing was jointly held on the motion of the above referenced

debtors and debtors in possession (the "Debtors") for the use of cash collateral and the motion of

Ryder Truck Rental, Inc. ("Ryder") to compel payment of post-petition administrative rent (and for

adequate protection).  Secured creditors Mobilization Funding, LLC and City Bank objected to the

---

[1] The Debtors in these chapter 11 cases are Le-Mar Holdings, Inc. (Case No. 17-50234-RLJ), Edwards Mail Service, Inc. (Case No. 17-50235-RLJ), and Taurean East, LLC (Case No. 17-50236-RLJ).

Debtors' proposed use of cash collateral, as did Ryder.[2]  Evidence, both through testimony of witnesses and documentary evidence, was presented on the matter.  Then, upon taking a recess, the parties—or most of them—announced that they had agreed to the Debtors' interim use of cash collateral in accordance with the budget presented by the Debtors for a period of thirty days, which thirty days expire on November 30, 2017.  Ryder, however, did not agree to the Debtors' proposed use of cash collateral and, more important, pressed its motion for payment of administrative rent.  After conferring with counsel in open court, the Court approved the proposed thirty-day use of cash collateral but, in doing so, took Ryder's request for immediate payment of administrative rent under advisement.  As discussed below, Ryder's request for immediate payment of administrative rent, if allowed, would impact the Debtors' ability to use cash collateral.

## I.

The cash collateral here is the accounts receivable generated from the Debtors' business of providing freight delivery services for the United States Postal Service.  The Debtors have contracts with the USPS by which they deliver mail and packages between USPS processing centers.  The Debtors operate a fleet of over 250 tractor trailers, trucks, and vans.  Mobilization and City Bank are the first and second lienholders, respectively, against the accounts receivable (with City Bank also secured by certain items of equipment).  The interim order [Doc. No. 129] authorizes Debtors' use of cash collateral in accordance with the budget, with replacement liens on new receivables granted to Mobilization and City Bank (conditioned on validity of their liens and to the extent of any diminution of value).

Ryder does not have an interest, per se, in accounts receivable.  Ryder, as lessor, leases approximately 115 vehicles under a commercial truck lease with the debtor Edwards Mail Service,

---

[2] An objection was also filed by Tex-Fi Capital, LLC, but counsel for Tex-Fi Capital and the Debtors announced at the hearing that such objection had been resolved.

Inc. (EMS); it also provides maintenance and service to such vehicles and other vehicles owned by the Debtors, under service and maintenance agreements between Ryder and EMS. Ryder submits that the Debtors are indebted to it from prepetition defaults of over $510,000 and that the Debtors are incurring at least $325,000 per month post-petition for rent and maintenance. Ryder's objection, therefore, to the Debtors' use of cash collateral is that (i) the Debtors' interim budget does not provide for payments to Ryder of its accruing claim for rent and maintenance, and (ii) if it did, the Debtors could not afford such payments. This position assumes that Ryder *must* be paid accruing post-petition rent and maintenance fees.

The Debtors do not dispute, and the evidence establishes, that the Debtors cannot presently pay Ryder the full amount of the accrued rent and maintenance for the first two months of this case. The Debtors filed this case on September 17, 2017.

The Debtors' budget provides, without qualification, that they will make the regular rental and maintenance payments in November (on a prorated basis) and then again for December 2017 (a full payment). The prorated payment is a half-month payment of $120,000 on the truck lease and $55,000 for maintenance fees; the full payment in December is $240,000 for the truck lease and $55,000 for maintenance. Such payments must be made in accordance with § 365(d)(5) of the Bankruptcy Code, which requires that the debtor in possession perform all of its obligations "first arising from or after 60 days after the order for relief in a case under chapter 11 . . . under an unexpired" personal property lease. (The Debtors and Ryder dispute whether the proposed payments are—or will be—the correct amounts owing under the contracts. The Court is not here deciding this question.)

Ryder argues that regardless of the § 365 mandate, the Debtors should also be directed to pay the rent and maintenance obligations *now*, for the first 60 days of the case. To the extent Ryder is not so paid, the rental and maintenance charges accrued since filing the case will constitute an

administrative expense as "actual, necessary" expenses of preserving the estate. 11 U.S.C. § 503(b)(1). This result is not disputed by the Debtors. But the Debtors contend that the statute does not require payment *now*, as accrued. They, in effect, want a two-month hiatus, i.e., a breathing spell, from having to make such payments which, they contend, is implied by the requirement under § 365(d)(5). To direct immediate payment of an allowed administrative expense under § 503(b) is wholly within the Court's discretion.[3]

## II.

The Court will not require the payment now of Ryder's accruing administrative claims. The budgeted payments in November and December 2017 will adequately protect Ryder's interests in the leased vehicles. Ryder will no doubt hold an administrative claim with the legal leverage that that provides going forward in this chapter 11 case.

The Debtors' budget over the next few months is, under the circumstances, realistic and reasonable. The Debtors' income is based on contracts with the USPS that are not, at present, in jeopardy. The Debtors generate over $2 million of income each month. The proffer and follow-up testimony of Chuck C. Edwards, the president of Le-Mar Holdings, Inc. and Edwards Mail Service, Inc. and the managing member of Taurean East, LLC, sufficiently addressed the questions raised concerning the Debtors' ongoing, monthly expenses.

---

[3] *See CIT Commc'ns Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229, 242 (4th Cir. 2005) ("While an administrative expense under § 503(b) must be paid in cash on the effective date of the plan in a chapter 11 proceeding, . . . and must be paid first upon a distribution of the assets in a chapter 7 proceeding, . . . bankruptcy courts have wide latitude in deciding whether to order payment prior to these deadlines."); *Varsity Carpet Servs., Inc. v. Richardson (In re Colortex Indus.)*, 19 F.3d 1371, 1384 (11th Cir. 1994) ("The determination of the timing of payment of administrative expenses is a matter within the discretion of the bankruptcy court."); *In re Genesis Press, Inc.*, No. 13-01376-HB, 2014 WL 25717, at *3 (Bankr. D.S.C. Jan. 2, 2014) ("Accordingly, it is within this Court's discretion as to whether immediate payment of the administrative claims is appropriate in this situation."); *In re Graphic Trade Bindery, Inc.*, No. 12-13189-TJC, 2012 WL 1232089, at *6 n.8 (Bankr. D. Md. Apr. 12, 2012) (". . . immediate payment of administrative expenses . . . is left to the discretion of the bankruptcy court.") (internal quotation and citation omitted); *In re Beltway Med., Inc.*, 358 B.R. 448, 456 (Bankr. S.D. Fla. 2006) ("[W]hat is 'timely performance' is dictated by the Bankruptcy Code, the underlying lease, and this Court's discretion based on the facts and circumstances of a particular case.").

Denying the use of cash collateral at this still-early stage of the proceeding, or requiring that the Debtors pay over $600,000 on an administrative claim, would, in effect, shutter the business and end this case. The Debtors have a viable, ongoing business that generates regular income; they have, they report, over 275 employees. The asserted financial and legal obstacles potentially facing the Debtors do not warrant a requirement that the Debtors pay Ryder's administrative claim as it accrues over the first two months of this case.[4]

It is, therefore,

ORDERED that Ryder's objection to the Debtors' interim use of cash collateral is denied; it is further

ORDERED that Ryder's motion for *payment now* of administrative rent and fees is denied.

### End of Memorandum Opinion and Order ###

---

[4] Ryder argues that the Debtors will not be able, under any chapter 11 plan, to pay Ryder's administrative claim; and Mobilization submits that it holds an absolute assignment of receivables which ultimately will foreclose the Debtors' usage of the receivables.